IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**FENYANG O. FRANCIS,**

    **Plaintiff,**

    v.

**UNITED STATES OF AMERICA,**

    **Defendant.**

Civil No. 11-1751 (GAG)

**OPINION AND ORDER**

Fenyang O. Francis ("Francis" or "Plaintiff") sued the Federal Bureau of Prisons ("BOP" or "Defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), the Constitution of the Commonwealth of Puerto Rico, and Articles 1802 and 1803 of the Puerto Rico Civil Code.[1]  BOP's motion for summary judgment is presently before the court.  (Docket No. 39.)  Francis opposed the motion.  (See Docket No. 43.)  For the following reasons, the court **GRANTS** Defendant's motion for summary judgment at Docket No. 39.

**I.    Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

---

[1] Francis's Bivens claim was previously dismissed by the court.  (See Docket No. 30.)

**Civil No. 11-1751 (GAG)**

'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986.)

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.   Legal and Factual Background**

**Civil No. 11-1751 (GAG)**

On March 4, 2010, while Francis was an inmate at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico, several inmates assaulted him in the laundry room. (See Docket No. 41 at 1-2.) The inmates covered their faces with shirts and hit Francis with broom sticks and socks filled with padlocks. (See Docket No. 44-1 at 2-3.) Immediately after the assault, Francis was taken to the infirmary and received four stitches to close a gash on his head. (See Docket No. 41 at 3.)[2]

Either the day of the assault or the previous day, Francis argued with another inmate. Francis took a second plate of food at lunch while some inmates were still waiting for their first plate. (See Docket No. 41-3 at 5-6.) A correctional officer ("CO") told Francis and the other inmate to "break it up," but Francis did not tell the CO what had transpired. (Id. at 10-11.) Francis did not tell the CO or any other BOP staff members about the incident or that he felt unsafe. (Id. at 11; Docket No. 40-3 at 1.) Indeed, Francis indicated during his deposition that he only felt unsafe during his first day at MDC. (See Docket No. 41-3 at 22.)

After the assault, Francis told a CO that he could recognize at least two of the three or four inmates who attacked him, but he did not know their names. (See Docket No. 41-4 at 8.) However, Francis was never able to identify the inmates involved. (Id. at 1.) As part of its investigation into the assault, BOP conducted an upper body search of inmates in Francis's unit, but none had injuries consistent with Francis's description of the assault. (Id. at 8.) There is no evidence in the record that

---

[2] Although this statement of fact is contradicted by Francis's deposition testimony (see Docket No. 41-3 at 19), Francis admitted all of the BOP's proposed statements of fact (see Docket No. 44 at 1). However, Francis has not alleged that the medical treatment he received was negligent, so this fact is immaterial.

**Civil No. 11-1751 (GAG)**

the inmate involved in the food line incident was involved in the assault, but Francis stated in his deposition that he heard the inmate "owned a unit" and that "his people" were involved in the assault. (See Docket No. 41-3 at 7, 20.) Francis was moved to the Special Housing Unit (SHU) for his safety during the investigation. (See Docket No. 41-5 at 4.)[3]

Francis filed an amended complaint alleging that BOP "failed to enforce acceptable correctional practices" at MDC. (See Docket No. 13 at 5.) Francis alleges that the conditions at MDC "created an unreasonable risk of harm in reckless disregard of Francis's safety and physical integrity." (Id. at 4.) Specifically, overcrowding at MDC and the lack of correctional officers "created an unreasonable risk of violence." (Id.)

### III. Subject Matter Jurisdiction

BOP contends that failing to protect Francis from assault is within the discretionary function exception of the FTCA, and therefore this court lacks subject matter jurisdiction because the government has not waived its sovereign immunity. (See Docket No. 40 at 4-5.) Francis responds that the discretionary function exception does not bar his claims because the BOP "did not have discretion to allow masked armed inmates roaming the prison unsupervised." (See Docket No. 43 at 3.)

---

[3] Local Rule 56(e) provides, "An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." BOP chose to generally cite exhibits that are several pages long. In the ordinary course, the court would disregard these facts for failure to comply with the anti-ferreting rule. See Caban Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007); Mercado v. Cooperativa de Seguros de Vida, 726 F. Supp. 2d 96, 98 (D.P.R. 2010). However, because Francis has admitted all of BOP's proposed statements of fact, the court will overlook the government's noncompliance in this case.

**Civil No. 11-1751 (GAG)**

The FTCA allows prisoners to bring claims against the United States for injuries incurred in prison, but there are exceptions that shield the government from liability. United States v. Muniz, 374 U.S. 150, 153 (1963). The discretionary function exception provided by 28 U.S.C. § 2680 is "[p]erhaps the most expansive" exception. Santana-Rosa v. United States, 335 F.3d 39, 42 (1st Cir. 2003). Francis analogizes his case to Muniz. However, the Muniz Court did not decide the question of whether the discretionary function exception in the FTCA barred the plaintiffs' claims. 347 U.S. at 163. Muniz was pursued by a group of inmates into a dormitory. Id. at 152. A prison guard locked Muniz and the other inmates in the dormitory instead of attempting to stop the assault, allowing the inmates to beat Muniz so severely that he sustained a fractured skull and went blind in one eye. Id. Muniz sued the government on the theory that prison officials negligently failed to provide enough security guards to prevent the assault. Id. On remand, the United States District Court for the Southern District of New York concluded that the discretionary function exception barred Muniz's claims. 280 F. Supp. 542, 549 (S.D.N.Y. 1968).

Francis argues the facts of his case are analogous to Muniz and, therefore, the discretionary function exception should not bar his claim. (See Docket No. 43 at 3.) As noted previously, the Supreme Court did not decide the applicability of the discretionary function exception in Muniz. Therefore, analogizing the facts of that case does not advance Francis's argument that the discretionary function exception does not apply here. Francis's reliance on the similarity of the facts of his case to the facts presented in Muniz is therefore misplaced.

The Supreme Court has provided a two-part test to determine whether the discretionary function exception applies to a FTCA case. First, the challenged conduct must be discretionary in

**Civil No. 11-1751 (GAG)**

nature, and second it must be the kind of conduct "that the discretionary function exception was designed to shield." United States v. Gaubert, 499 U.S. 315, 322-23 (1991). This rather circular logic "protects only governmental actions and decisions based on considerations of public policy," which is also conspicuously broad. Berkovitz v. United States, 486 U.S. 531, 537 (1991). When the government defendant properly invokes the discretionary function exception, "the government will be shielded from liability, no matter how negligently an employee may have acted." Santana-Rosa, 335 F.3d at 42. However, "[t]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536).

The First Circuit has held that the discretionary function exception bars claims by prisoners alleging that BOP generally failed to protect them, as well as claims based on more specific claims of negligence. Santana-Rosa, 335 at 43. In Santana-Rosa, the plaintiff was assaulted by another inmate using a broom as a weapon. Id. at 41. The court could not determine from the record whether the inmate was given a broom as part of his job as a kitchen orderly or if he was able to obtain the broom for an unauthorized purpose. Id. The court granted summary judgment for the defendant, reasoning that whether to assign an inmate a broom and how to store brooms involved policy decisions "within an atmosphere where there was 'room for choice.'" Id. at 43 (quoting Attallah v. United States, 955 F.2d 776, 783 (1st Cir. 1992)). The BOP is also generally required by statute to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States[.]" 18 U.S.C. § 4042(a)(2). This statutory language

**Civil No. 11-1751 (GAG)**

allows the BOP to make policy decisions rather than mandating a specific course of conduct. Santana-Rosa, 335 F.3d at 44. Therefore, the discretionary function exception barred the plaintiff's claims. Id.

Francis alleges that BOP was negligent by "fail[ing] to enforce acceptable correctional practices" at MDC and providing insufficient COs for the overcrowded facility. (See Docket No. 13 at 4-5.) There is no evidence as to the instigators' identities or how they obtained the brooms, but evidence exists that BOP gives inmates padlocks. (See Docket No. 41-3 at 21.) Regardless of whether BOP entrusted the inmates with brooms or stored the brooms in a manner that allowed the inmates to obtain them, Santana-Rosa makes it clear that the discretionary function exception bars Francis's claim. 335 F.3d at 43-44; see also Subrun v. United States, No. 10-1161, 2010 WL 3809856, at *4 (D.P.R. Sept. 28, 2010) (applying discretionary function exception to bar plaintiff's negligence claim when BOP's failure to inspect or account for tools allowed inmate to attack plaintiff with screwdriver).

Section 4042(a)(2) gives the BOP discretion to provide for the safekeeping of inmates. It does not require BOP to undertake any specific course of conduct, but instead leaves "room for choice" in providing for the safekeeping of inmates. Santana-Rosa, 335 F.3d at 44. Francis has not alleged that BOP employees violated any statute, regulation, or policy that would require a specific course of conduct for BOP employees to follow in supervising inmates. Therefore, the first element of the Gaubert test is satisfied.

The second element of the Gaubert test is whether the discretionary conduct at issue is the type of conduct "that the discretionary function exception was designed to shield." 499 U.S. at 323.

**Civil No. 11-1751 (GAG)**

The purpose of the discretionary function exception is "to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresade Viacao Aerea Rio Grandense (Varig Airlines), 487 U.S. 797, 808 (1984). Without a discretionary function exception, "[g]overnmental operations would be burdened, if not paralyzed, with courts 'second guessing' policy decisions through the medium of tort law." Santana-Rosa, 335 F.3d at 43. The First Circuit noted in Santana-Rosa that "[i]n many, if not most, instances where an inmate is unfortunately injured by another inmate, it will be possible to argue that a different exercise of discretion or a different policy choice might well have forestalled the injury." Id. at 44.

BOP's conduct falls within the bounds of the type of decision-making for which the discretionary function exception was designed. BOP has leeway to decide how it implements § 4042, and in making these choices BOP must weigh public policy considerations such as budgetary concerns, the need to protect inmates, and the characteristics of a particular inmate population. Subrun, 2010 WL 3809856 at *5. Congress created the discretionary function exception so that courts would not second guess BOP's policy decisions through tort law. See Berkovitz, 486 U.S. at 536-37. It is clearly ill-advised to give criminals tools that may likely be used as weapons. However, BOP has a duty to provide for the security of inmates and inmates' property. See Manning v. U.S. Dept. Of Justice, 104 Fed. Appx. 907, 909 (4th Cir. 2004). How BOP accomplishes its charge involves public policy considerations and budgetary considerations. The discretionary function exception binds the court to **GRANT** the summary judgment at Docket No. 39.

**V.    State Law Claims**

As the court previously noted, Francis's Bivens action was time-barred. (See Docket No.

**Civil No. 11-1751 (GAG)**

30.) Francis's underlying state claim is also barred by the applicable statute of limitations. In Puerto Rico, the statute of limitations for personal injury cases is one year from the date plaintiff knows or should have known of his injury. P.R. LAWS ANN. tit. 31, § 5298 (1990). Francis knew of his injury on March 4, 2010, but did not file his complaint until August 4, 2011. (See Docket No. 1.) Francis did not contest that the applicable statute of limitations barred his Bivens claims. In fact, he conceded his Bivens argument. (See Docket No. 29 at 1.) Nor has he argued that the court should equitably toll the statute of limitations.

Even if Francis's state law claims were not time-barred, the federal government is immune from suit unless Congress expressly waives the government's sovereign immunity. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). The FTCA provides a limited waiver of sovereign immunity and provides the District Courts with exclusive jurisdiction over claims arising under state negligence laws. 28 U.S.C. § 1346(b)(1). Because Francis's Bivens and FTCA claims fail, the court **DISMISSES** Francis's remaining state law claims.

## VI. Conclusion

For the foregoing reasons, the court **GRANTS** the United States's motion for summary judgment at Docket No. 39.

**SO ORDERED**

In San Juan, Puerto Rico this 3rd day of April, 2013.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge